IN RE APPLICATION OF RAPID FILM SERVICE, INC.
RAPID FILM SERVICE, INC., APPELLEE, v. BEE LINE MOTOR
FREIGHT ET AL., APPELLANTS.

146 N. W. 2d 563

Filed November 25, 1966. No. 36272.

Nelson, Harding, Acklie, Leonard & Tate and Viren, Emmert & Epstein, for appellants.

James E. Ryan and Jerry L. Snyder, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and MANASIL, District Judge.

WHITE, C. J.

This is an appeal from an order of the Nebraska State Railway Commission interpreting a certificate of public convenience and necessity issued to the appellee, Rapid Film Service, Inc.

On January 31, 1938, the Nebraska State Railway Commission issued a "grandfather" certificate to Richard R. and Herbert E. Lysinger, doing business as Rapid Film Service, which authorized it to transport commodities as follows: "Commodities generally and specially to wit: Motion picture films, mainly, but also automobile accessories, yeast, oil and greases and small freight." On June 30, 1965, this cerificate was transferred to the appellee, Rapid Film Service, Inc. A petition was filed by the appellants on July 16, 1965, requesting an interpretation of this certificate. After hearing on September 9, 1965, the commission entered an order on December 15, 1965, interpreting the certificate in question to authorize the transportation of, "commodities specially to-wit: Motion picture film and commodities generally." From this order granting authority to transport commodities generally this appeal is taken.

The evidence shows that the appellee's predecessor, Richard R. and Herbert E. Lysinger, doing business as Rapid Film Service, filed its original application for a grandfather certificate on August 26, 1936. The hearing on this application was held on October 22, 1937. The evidence adduced at this hearing was to the effect that the main business of the applicant was the transportation of motion picture film, but that it transported many other commodities. The applicant produced evidence

that it transported motion picture films mainly but also auto accessories, tires, batteries, yeast, oil and greases, and small freight. One of the partners testified at the original hearing that at that time the partnership was moving "commodities generally and especially moving picture films to and from various points."

The evidence also shows that at the time of the original hearing on October 22, 1937, the partnership was operating with a 1½-ton 1936 Dodge and two 1937 ½-ton Ford pick-ups. A list attached to the grandfather application showed the transportation of auto parts, theater equipment, auto parts and supplies, theater film and advertising, oil and greases, oil barrels, paint in cans, linseed oil, auto radios, and yeast products. There is also evidence of many commodities that were being transported that were not listed in the original application, such as fence and wiring, steel rods for blacksmith shops, furniture, groceries, etc. There was testimony before the commission that in its business prior to the time of the original hearing on the application the partnership was trucking anything that could be put in a truck. The term, "Motion Picture films mainly," appears in the original certificate. The evidence shows that the reason for this was that the transportation of motion picture films was considered to be a special commodity, recognized as being different from commodities generally and requiring more than the minimum of cargo insurance.

Subsequent to this hearing the examiner found that the applicant "was in actual bona fide operation as a common carrier of commodities generally and specially, to-wit: Motion Picture films, mainly, but also automobile accessories, yeast, oil and greases and small freight, by motor vehicle April 1, 1936, * * *." Based on this finding, the commission granted a "grandfather" certificate on January 31, 1938, as follows: "Commodities generally and specially, to-wit: Motion Picture films, mainly, but also automobile accessories, yeast, oil

and greases and small freight." Since the issuance of this grandfather certificate, the appellee's predecessor, a partnership, has continued to transport all kinds of commodities. The commission conducted, through its inspector, an examination of the types of commodities transported and the record shows that they varied from one gallon of alcohol to a corn binder. The commission never advised appellee's predecessor that there was anything about its transportation that was illegal. The evidence shows that it has continued operations and handled various shipments of electrical appliances and articles weighing thousands of pounds. It has added to its equipment and now owns 26 pieces of equipment which can carry pay loads of 27,900 pounds. At the present time only 22 percent of the partnership's gross revenue is gained from the transportation of motion picture films and accessories, and the remaining 78 percent of gross revenue is derived from the transportation of general commodities.

The commission's order of December 15, 1965, interpreting the original certificate, deleted the description of specific commodities and authorized the transportation of motion picture films and commodities generally. The appellants contend that the words, "to-wit" and "small freight" limit the grant of the authority of appellee and restrict its transportation of general commodities to the classification of small items of general merchandise. We do not agree. Appellee's commodity authorization and certificate granted appellee two separate authorities. One authority was to transport commodities generally and the other was to transport special commodities enumerated in the certificate. The two grants are separated by the word "and." We believe the correct interpretation of the language involved herein, in context, is that the word "and" means along with, also, or as well as. The word "and" is "A conjunction connecting words or phrases expressing the idea that the latter is to be added or taken along with the first." Black's Law

Dictionary (4th Ed.), p. 112. See, Cincinnati Enquirer, Inc. v. American Sec. & Trust Co., 107 Ohio App. 526, 160 N. E. 2d 392; Carter v. Keesling, 130 Va. 655, 108 S. E. 708; Porter v. Moores, 4 Heisk. (Tenn.) 16. Although there is a diversity of authority on this subject, the word "or" may be substituted for the word "and" depending upon the context of the language. See Carlsen v. State, 127 Neb. 11, 254 N. W. 744. We point out that this interpretation gives meaning to all of the language of the grant and does not restrict it, as the appellants would have us do, to a simple description and limitation of specific commodities mentioned after the word "to-wit." We hold, therefore, that when a certificate shows that authority is granted for the transportation of commodities generally, the addition of the words "commodities specially to-wit" is not a restriction of the commission authority granted to the appellee for the transportation of general commodities.

It appears, therefore, that the interpretation of its own certificate made by the commission is reasonable. It may not be interfered with by this court in the absence of a showing that it is illegal, arbitrary, or unreasonable. Appellants cite a Utah case, W. S. Hatch Co. v. Public Service Commission, 3 Utah 2d 7, 277 P. 2d 809, to the effect that the rule requiring a showing of arbitrariness and unreasonableness is not applicable in this case and that the court should approach the problem as being purely a question of law for its decision. The proper rule in Nebraska is that the commission has the right to interpret its certificates of public convenience and necessity and this court should review or interfere with such an interpretation made by the commission only when it is necessary to keep it within its jurisdiction and to protect legal and constitutional rights, and when the order is arbitrary and unreasonable. In re Application of Meyer, 150 Neb. 455, 34 N. W. 2d 904; Kassebaum v. Nebraska State Railway Commission, 142 Neb. 645, 7 N. W. 2d 464.

Appellants in this case attempt to support their position by reviewing the contents of the grandfather application and the evidence offered to support it. There are two answers to this contention. First, there is evidence to support the examiner's and the commission's original finding that the appellee's predecessor was transporting commodities generally. It is true that the appellee's predecessor was limited as to size of goods actually transported by the types of trucks that it was using then. However, the evidence shows that it was transporting a wide range of commodities and it was moving "commodities generally and especially moving picture films to and from various points." In the light of these circumstances we are unable to hold that the commission's finding interpreting its own certificate is arbitrary or unreasonable. Second, we have held that the commission and this court, on review, cannot go behind a "grandfather" certificate to show that truck operations prior to the issuance of the certificate were different than those authorized by the certificate. Kassebaum v. Nebraska State Railway Commission, *supra*. In that case, in which this court had before it an appeal from the commission concerning the interpretation of a grandfather certificate, the court held as follows: "The Commission cannot, in this proceeding, go behind the certificate and show that Kassebaum's operations prior to that period were different than those set out in his certificate."

Appellants, citing authorities, contend that the word "to-wit" limits the language preceding it and restricts the appellee and its predecessor to the transportation of small freight and small items of general merchandise. The precise question is whether the word "to-wit" limits all of the language of the grant or simply the words preceding it "and especially." It seems to us that it was reasonable for the commission to find, under the circumstances, that the word "to-wit" only modified the word "especially." The specific items enumerated

were simply a description of some of the items of merchandise that were being transported at the time of the grandfather hearing, and this description was not intended to be a limitation upon the grant of authority for transportation of "commodities generally" contained in the certificate.

The record also shows that the appellee's predecessor had been transporting commodities generally for a period of almost 30 years and during that period of time the commission had inspected the type of goods transported and made no objection to it under the certificate of authority already issued on January 31, 1938. In Andrews Van Lines, Inc. v. Nielsen & Peterson, Inc., 180 Neb. 764, 145 N. W. 2d 584, we held that evidence of operations under color of authority may be considered by the commission in determining whether or not the proposed service is or will be required by the present or future public convenience and necessity. While this case is not directly in point, it seems applicable by a parity of reasoning. A long-continued operation, under color of authority from the original grant of the certificate to transport commodities generally, and the knowledge of the commission of such transportation, certainly support a conclusion of the commission that the original certificate intended to grant authority for the transportation of commodities generally.

We hold, therefore, that the order of the Nebraska State Railway Commission on December 15, 1965, interpreting the certificate to authorize the transportation of commodities generally is correct and should be affirmed.

AFFIRMED.