# SELDEEN *v.* CANBY ET AL.

[No. 90, September Term, 1970.]

*Decided November 12, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Joseph P. Blocher* and *Charles G. Dalrymple*, with whom were *Linowes & Blocher* and *R. Robert Linowes* on the brief, for appellant.

*C. Edward Hartman, II*, with whom was *Robert L. Burchett* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

In 1965, Dr. and Mrs. H. K. Vann sold their 150-acre farm in Montgomery County to Seldeen as trustee of an undisclosed trust. The record does not reveal what Seldeen paid for the farm but $368,450.98 of the purchase price was evidenced by the purchaser's promissory note, secured by a purchase-money deed of trust. The note, as described in the deed of trust, called for a $20,000 payment in reduction of principal on 6 January 1966, with interest at the rate of 6% payable annually on the unpaid principal balance for three years commencing 17 August 1966, which amounts were paid. The deed of trust continued:

> "The remaining principal balance * * * shall be paid in five equal, successive annual installments; first of such installments to be due and payable four years from the date of settlement [17 August 1969] or thirty (30) days from the date of official notification from the public utility supplying public water and sewer services that such services are available to serve the subject property, whichever occurs later; * * *."

Mindful of the significance of the 17 August 1969 date, counsel for Dr. and Mrs. Vann inquired of Washington Suburban Sanitary Commission (the Commission) early in 1969 regarding the availability of water and sewerage

at the tract. The Commission's secretary replied on 7 March 1969:

> "In response to your question concerning the availability of water and sewer to the Vann property, sewer service can be provided by this Commission in accordance with the provisions of Paragraphs 1 and 2 [which provided that the Commission was authorized by the Council to provide sewer service to areas being developed in accordance with the master plan] under the 'Now Therefore' clause of Montgomery Council Resolution 5-3032, September 6, 1966. Water service is also available from Georgia Avenue upon proper application and payment of such contributions as may be required by the Commission."

Relying on this letter, counsel for Mrs. Vann demanded that the first of the five annual payments discharging the principal of the debt be made on 17 August 1969. When payment was not forthcoming, an action was instituted in the Circuit Court for Montgomery County by the appellees Canby and Council, as substituted trustees under the deed of trust, to foreclose the deed. Seldeen countered with a petition praying that the foreclosure be enjoined and that the rights of the parties be declared. From a decree denying injunctive relief and declaring that the first installment of principal became due and payable on 17 August 1969, Seldeen has appealed.

Seldeen would have us reverse the decree of the lower court for three reasons: (i) that the court erred in determining that public water and public sewer were "available to serve the subject property" in view of the evidence presented; (ii) that the court erred in finding that the letter from the secretary of the Commission was the "official notification" required by the deed of trust, and (iii) that the court erred in rejecting Seldeen's testimony as to the intent and meaning of the deed of trust.

## (i)

In support of his contention that the evidence does not justify the court's finding that utilities were available, Seldeen makes much of the fact that water was no closer to the tract in 1969 than it was in 1965 and that while a sewer has been installed in Batchellor's Forest Road, on which the Vann farm had a small frontage, it was an 8 inch line, laid in 1968 to serve the Sherwood-Olney Middle School, and was conceded to be too small to serve the Vann tract from its Batchellor's Forest Road frontage.

The difficulty is that Seldeen attempts to treat "available" as if it were a synonym of "furnish" or "deliver." There was testimony that the water stub, which was there in 1965, is 1,200 feet from the Vann farm, and that a stub on a 10 inch sewer line, installed in 1968, is 800 feet from the Vann farm. In 1965, the nearest sewer had been several miles away. The appellant's expert testified that the sewer stub had been installed with a future northwesterly extension (in the direction of the Vann farm) in mind, and that the 10 inch line would be adequate for this purpose, although a pumping station might be required if the Commission failed to acquire a right of way over land owned by others, which it had the power to do by condemnation.

Two of the definitions which Webster's New International Dictionary (2d ed. 1957) gives for "available" are: "Such as one may avail oneself of; capable of being used to accomplish a purpose; usable; as, an *available* excuse" and "At disposal; accessible or attainable; obtainable; as, tickets *available* on that day." There is a clear connotation of activity, not passivity, on the part of a promisor who conditions his performance on something's being available. If a person obligates himself to do something, say, when tickets for a certain theatrical performance become available, who would doubt that an announcement that the tickets are on sale is the event that requires the promisor to act? The obligee is not required to go to the box office, pay for the tickets and deliver them to the obligor in order to hold him to his bargain.

In *Metz v. Tusico, Inc.,* 167 F. Supp. 393 (E.D. Va. 1958), a case similar to this, the seller warranted "that water is available to the property along state route 626, or rear of the subject property." It was later determined that although there was no water line in Route 626, there was water available in subdivisions surrounding the tract. In dismissing a complaint for breach of warranty, the court concluded "by 'available' the parties to the contract did not contemplate that water should be at the tract's edge." at 397. If the parties had intended that water and sewer connections must be provided at the edge of the tract, at no expense to the owner, they should have said so.

## (ii)

Seldeen next argues that the letter from the secretary of the Commission, Bonifant, was not the "official notification" contemplated by the deed of trust. Montgomery County Code (1965) § 71-4, which created the Commission, provides for the appointment of a secretary, and describes his duties:

> "The duties of the secretary shall be prescribed by the commission and shall include the supervision of all the administrative activities of the commission, except those relating to engineering and financial matters, acting as liaison between the commission and the public, and in general to promote relations for the commission; * * *."

Even a cursory reading of the statute makes it clear that the secretary is the chief administrative officer of the Commission and is its point of contact with the public it serves. Seldeen argues that Bonifant's letter is his personal opinion, despite Bonifant's testimony that he consulted the Commission's engineering and legal departments, and that it does not bind the Commission, citing *Inter-City Land Co. v. Baltimore County,* 218 Md. 80, 145 A. 2d 263 (1958). As the appellees say, the letter does

not purport to bind the Commission, and Bonifant does not claim that it does. It simply is a disclosure of information. We regard the letter as the official notification of availability called for by the deed of trust.

### (iii)

Seldeen's final contention, that it was error for the chancellor not to permit him to testify as to the intent of the parties, can be easily disposed of. The chancellor found no ambiguity in the language of the deed of trust, nor do we. If a written agreement is susceptible of a clear and definite understanding, construction is a matter for judicial interpretation. *Chapman v. Ford*, 246 Md. 42, 227 A. 2d 26 (1967); *Rothman v. Silver*, 245 Md. 292, 226 A. 2d 308 (1967); *Glass v. Doctors Hospital, Inc.*, 213 Md. 44, 131 A. 2d 254 (1957); *Ray v. Eurice*, 201 Md. 115, 93 A. 2d 272 (1952). The test of true interpretation of a contract is not what a party making it thought it meant, or intended it to mean, but what a reasonable person in the position of the parties would have thought it meant, *Sands v. Sands*, 252 Md. 137, 249 A. 2d 187 (1969).

Mr. Bonifant, the secretary of the Commission, in his testimony drew the distinction between "available" and "allowed": water service was available to the tract in 1965, and water and sewer service were available in 1969. Whether water service would have been allowed prior to 1968, or water and sewer service would be allowed after 1968, could only be determined when the developer requested the service and was advised by the Commission of the conditions he must meet.

The appellees make the point, and we think quite rightly, that the parties thought of water and sewer service "like salt and pepper—always together." While water was available in 1965, it is possible that service would not have been allowed until sewer service was available. Now that sewer service is available, until the developer makes application, there is no way of determining whether his application will be granted.

On the facts before us, we might have reached no different result had the installment of principal been payable upon the grant of an application. In *Wissahickon Realty Corp. v. Boyle*, 385 Pa. 198, 122 A. 2d 720 (1956) where a lease was to become effective upon approval by the Liquor Control Board of the transfer of a liquor license, the tenant applied for a transfer and then withdrew her application. The court held the lessee bound by the lease, since she "could not by her own act make the fulfillment of that condition impossible and thereby relieve herself from her obligation under the agreement." Our prior decisions are in accord. *Alois v. Waldman*, 219 Md. 369, 375, 149 A. 2d 406 (1959) ; see also, *Ewell v. Landing*, 199 Md. 68, 85 A. 2d 475 (1952).

The parties, however, chose to provide that payments in reduction of principal would commence, not when an application for water and sewer service was granted, but on the latter of two dates: 17 August 1969, or "* * * thirty (30) days from the date of official notification from the public utility supplying public water and sewer services that such services are available * * *." Since service was available on 7 March 1969, we find no error in the chancellor's determination that the principal payment was due on 17 August 1969.

*Decree affirmed, costs to be paid by appellant.*