BANKERS AND SHIPPERS INSURANCE COMPANY
OF NEW YORK *v.* MARIE ROGERS
URIE ET AL.

[No. 286, September Term, 1977.]

*Decided December 9, 1977.*

The cause was argued before GILBERT, C. J., and MORTON and COUCH, JJ.

*Samuel S. Smalkin,* with whom was *Joseph H. Urner* on the brief, for appellant.

*Donald L. DeVries, Jr.,* with whom were *Charles E. Iliff, Jr.,* and *Semmes, Bowen & Semmes* on the brief, for appellee Electro Enterprises, Inc.

GILBERT, C. J., delivered the opinion of the Court.

Stripped bare of rhetoric, legal niceties, and the like, this appeal boils down to what is meant by the conjunction "and" [1] as used in a policy of aircraft liability insurance.

---

[1] Stuart Berg Flexner's, *I Hear America Talking* 190 (1976), reports that the conjunction used most often by Americans is "and."

The particular clause of the policy upon which our attention is focused reads:

> "PILOTS: The coverage afforded by this policy shall not apply while the [insured] aircraft is operated in flight by other than the following pilots:
>
> PAUL ERICKSON *AND* WILFORD GOLD-MAN" (Emphasis supplied.)

The appellant-insurer, Bankers and Shippers Insurance Company of New York (Bankers), quotes from three out-of-state opinions [2] which rely upon *Black's Law Dictionary* 112 (4th ed. 1968); 3A C.J.S. *And* 450-51 (1973); and *Century Dictionary* (1911). All three authorities share common definitions of "and" as "along with," "also," "besides," "moreover," "in addition to," and "together with."

The various appellees [3] assign a different meaning to "and" and support it by similarly impressive authority including *Kennedy v. Haskel,* 67 Kan. 612, 617, 73 P. 913, 914 (1903); *Fidelity & Deposit Co. v. Mattingly Lumber Co.,* 176 Md. 217, 226, 4 A. 2d 447, 452 (1939); and Webster's *Third New International Dictionary* 80 (1976).

There are, to be sure, other issues involved in this matter, but the overriding one is the meaning of the conjunction "and" as used in the above quoted portion of the aviation

---

[2]. In re Rapid Film Service Inc. 181 Neb. 1, 4-5, 146 N.W.2d 563, 565-66 (1966); Cincinnati Enquirer, Inc. v. Am. Security & Trust Co., 107 Ohio App. 526, 533, 160 N.E.2d 392, 397 (1958); and Heald v. City of Cleveland, 19 Ohio N.P. (n.s.) 305, 323 (1916).

[3]. The appellees are: Marie Rogers Urie, individually and as mother and next friend of Jackson Rogers Urie, a minor, Electro Enterprises, Inc., a corporation, Sandra E. Mose, co-executrix of the estate of Paul C. Erickson, deceased, Deborah E. Gigeous, co-executrix of the estate of Paul C. Erickson, deceased, Lillian Nuger, Marc G. Nuger, Ronn N. Nuger, Lillian Nuger, mother and next friend of Laurie S. Nuger, infant, Pennsylvania Manufacturers Association Insurance Company, Juanita C. Bittle, personal representative of the estate of Earl G. Bittle, deceased, Cessna Aircraft Company, Inc., a corporation, and Rosalie L. Turner, individually, and Rosalie L. Turner as mother and next friend of Lori Jean Turner, Steven Wayne Turner and Roma Ragina Turner.

insurance policy.[4] "Words," Rudyard Kipling observed, "are ... the most powerful drug used by mankind." *Speech,* February 14, 1923. Accepting Kipling's pronouncement as true *arguendo,* the question becomes who received the "fatal overdose," Bankers or the appellees?

For the reasons stated *infra,* we conclude that Bankers' appeal must fail, and, accordingly, we affirm the judgment of the Circuit Court for Washington County.

## THE FACTS

Effective April 30, 1973, Bankers issued an aircraft liability policy to Electro Enterprises, Inc. (Electro) of Hagerstown, Maryland. The policy provided for bodily injury coverage limits in the amount of $1,000,000 for each occurrence and $100,000 for each person. Item No. 7 of the policy contained the pilot limitation set out above *ipsissimis verbis.*

On March 29, 1974, Electro owned a Cessna Model 421 dual control aircraft. The plane left Hagerstown on that date for Scottsdale, Arizona [5] where a business meeting was to take place. There were five persons aboard including Paul Erickson, president of Electro, who was a pilot with a private plane license, Earl G. Bittle, a pilot who held a commercial license, Joseph Urie, Caswell Nuger and Irvin G. Turner.[6] A transcript of a recorded conversation between the pilot of the Cessna and the Air Route Traffic Control Center, Olathe, Kansas revealed that on the evening of March 29, 1974, at 7:19 p.m., the pilot reported:

> "[W]e're picking up very heavy icing we'd like to start a route around this please."

4. The problem one experiences in explaining the meaning of words is that at some later time one may be called upon to explain one's explanation.

5. In Patterson Agency Inc. v. Turner, 35 Md. App. 651, 652, 372 A. 2d 258, 259 (1977), we were told that Irvin Turner "was flying in a private plane with Paul Erickson to Las Vegas, Nevada." Apparently, the five men were going on to Las Vegas after the Scottsdale, Arizona meeting.

6. See n. 5, *supra.*

The route around the icing conditions was granted by the Control Center. Three minutes later a "May day may day" transmission was heard by Control and other aircraft in the area. The distress call was followed by — "Three one [7] (unintelligible) spinning." No more was heard by the Control Center from the Cessna, but an Ozark Airlines flight radioed that he heard an aircraft report "out of control and spinning in heavy icing. . . ." A ground search was initiated, and shortly thereafter the wreckage of the Cessna was found where it had crashed, in Clark National Forest, near Bunker, Missouri. There were no survivors.

All the appellees, except Electro, brought suit against the corporate owner of the aircraft. Demand was made by Electro that Bankers defend the actions. Bankers disclaimed coverage on the ground that "at the time of the alleged fatal accident [the plane] was being piloted by Earl G. Bittle, and second pilot, Paul C. Erickson, in direct violation of the policy contract."

Bankers, on December 13, 1974, filed, in the circuit court, a declaration for declaratory judgment and petition for injunction as ancillary relief. The declaration was subsequently amended. The matter went to trial before Judge Irvine H. Rutledge and a jury on July 28, 1976. A single issue, *videlicet,* "Do you find that Earl Bittle was actually manipulating the controls of the airplane at the time of the crash?", was submitted to the jury on the third day of the trial. The jury answered the issue by the single word, "No." Thus, the jury implicitly found that Paul Erickson was the pilot of the ill-fated aircraft at the time of the crash.

Following the jury's factual finding, Judge Rutledge ruled:

"(1) The words "Goldman *and* Erickson mean "Goldman *or* Erickson", so as to afford coverage if either was the pilot at the time of the . . . accident. (2) . . . [Bankers] is not relieved from defending [the] cases filed against it in related proceedings arising

---

7. "Three one" were the first two digits of the aircraft's identification number.

out of the . . . accident. (3) No stay in [the related] proceedings is granted. . . ." (Emphasis supplied.) [8]

## THE LAW

The application for Electro's aircraft insurance policy was signed on behalf of the company by Paul C. Erickson, its president. Immediately preceding Mr. Erickson's signature appeared the legend:

> "All particulars herein are warranted true and complete to the best of my/our knowledge and no information has been withheld or suppressed and I/we agree that this Application and the terms and conditions of the policy in use by the insurer shall be the basis of any contract between me/us and the Insurer. I hereby authorize this Company to investigate all or any qualifications or statements contained herein."

The application contained a statement that the aircraft was for "Corporate — Executive" purposes and would be "flown by professional pilots employed for this purpose." Additionally, "[o]ther [u]ses not indicated above" were explained by the wording, "Paul Erickson, Pres. — Student Pilot," thus clearly showing that Mr. Erickson would also pilot the plane. The application made manifest that "INA declined to write policy with Paul Erickson as a student pilot."

During the course of the three-day trial involving this matter, Bankers sought to introduce the application into evidence. Following a bench conference, which is not recorded in the transcript, an objection to the admission of the application was sustained.[9] It is the declination by Judge Rutledge to admit the application into evidence that Bankers perceives to be reversible error, but, as we have previously indicated, we do not share that point of view.

---

8. This Court also, in 1976, *declined* to stay the related proceedings.

9. There is in the record what appears to be the court reporter's *summary* of a hearing held before Judge Rutledge on October 18, 1976. The summary reads:

> "[T]he Plaintiff [Bankers], proffered that the question before the Court is not what happened the night of the accident, but what type

Maryland has unflinchingly adhered to the theory of the objective law of contracts at least since *McKeever v. Washington Heights Realty Corp.,* 183 Md. 216, 220, 37 A. 2d 305, 308 (1944). *See also, e.g., Orkin v. Jacobson,* 274 Md. 124, 128, 332 A. 2d 901, 903-04 (1975); *Little v. First Federated Life Ins. Co.,* 267 Md. 1, 5, 296 A. 2d 372, 375 (1972); *Slice v. Carozza Properties, Inc.,* 215 Md. 357, 368, 137 A. 2d 687, 693 (1958); *Ray v. Eurice,* 201 Md. 115, 126-27, 93 A. 2d 272, 279 (1952). By "objective law of contracts," we mean that the written language of the contract will be determinative of the liabilities and rights of the parties thereto, regardless of the contemplation of the parties, exclusive of fraud, duress or mutual mistake, at the time they entered into the agreement, unless the written language is not open to an unqualified understanding. *Orkin v. Jacobson, supra,* 274 Md. at 128, 332 A. 2d at 903-04; *Slice v. Carozza Properties, Inc., supra,* 215 Md. at 368; 137 A. 2d at 693; *Ray v. Eurice, supra,* 201 Md. at 127, 93 A. 2d at 279.

The objective law rule was trenchantly explicated by Judge Levine in *Kasten Constr. Co. v. Rod Enterprises, Inc.,* 268 Md. 318, 301 A. 2d 12 (1973), when he penned for the Court:

"The cardinal rule in the construction and interpretation of contracts is that effect must be given to the intention of the parties, unless it is inconsistent with some established principle of law, *Hardy v. Brookhart,* 259 Md. 317, 270 A. 2d 119 (1970); *Cadem v. Nanna,* 243 Md. 536, 221 A. 2d 703 (1966); *Schapiro v. Jefferson,* 203 Md. 372, 100 A. 2d 794 (1953). But, where a contract is plain and

---

of contract was entered into in May of 1973, between the parties and what type of policy did the company issue. Mr. Smalkin [Bankers' attorney] offered the Application for Insurance into evidence, which Application he had objected to in the former hearing. All attorneys for the Defendants [appellees] objected to the admission of the Application at this time. Court took the matter under advisement after arguments. . . ."

Our review of the record indicates that the summary is partially incorrect. It was one of appellees' counsel who objected to the admission of the application. Indeed, Mr. Smalkin endeavored to put the application into evidence.

unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed, *Little v. First Federated Life,* 267 Md. 1, 296 A. 2d 372 (1972); *Kermisch v. Savings Bank,* 266 Md. 557, 295 A. 2d 776 (1972); *Devereux v. Berger,* 253 Md. 264, 252 A. 2d 469 (1969). And, when the language of a contract is clear, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. *U.S.I.F. Triangle v. Rockwood Dev. Co.,* ... [261 Md. 379, 275 A. 2d 487 (1971)]; *Seldeen v. Canby,* 259 Md. 526, 270 A. 2d 485 (1970); *Katz v. Pratt Street Realty,* 257 Md. 103, 262 A. 2d 540 (1970)." 268 Md. at 328-29, 301 A. 2d at 18.

The contract in the case *sub judice* was integrated in the form of the aircraft liability policy issued by Bankers to Electro. Of course, by integrated we mean that the parties adopted the written policy "as the final and complete expression of the agreement. An integration is the writing or writings so adopted." 1 *Restatement of Contracts* § 228 (1932). *Ray v. Eurice, supra,* 201 Md. at 127, 93 A. 2d at 279, states: "... [W]here there has been an integration of an agreement, those who executed it will not be allowed to place their own interpretation on what it means or was intended to mean. The test in such case is objective and not subjective." Thus, "[i]t follows that the test of the true interpretation of an offer or acceptance is not what the party making it thought it meant or intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." (Footnote omitted.) 1 *Williston on Contracts* § 94 (3rd ed. 1957).

The insurance policy in the case now before us contained the following integration clause:

"25: Declarations. By acceptance of this Policy the Named Insured agrees that the statements in the Declarations are his agreements and representations, that this Policy is issued in reliance upon the

truth of such representations and that this Policy embodies all agreements existing between himself and the Company or any of its agents relating to this insurance."

When, as here, the language employed in a contract is clear and unambiguous, it is the province of the court rather than the jury to construe the contract. *H & R Block, Inc. v. Garland,* 278 Md. 91, 97, 359 A. 2d 130, 133 (1976); *Masano v. Albritton,* 245 Md. 423, 431, 226 A. 2d 299, 303 (1967); *Rothman v. Silver,* 245 Md. 292, 296, 226 A. 2d 308, 310 (1967); *Keyworth v. Indus. Sales Co.,* 241 Md. 453, 456, 217 A. 2d 253, 255 (1966); *Ebert v. Millers Mut. Fire Ins. Co.,* 220 Md. 602, 610, 155 A. 2d 484, 488 (1959). In construing an insurance contract, the court must read the policy as a single document and construe it as a whole. *Fed. Ins. Co. v. Allstate Ins. Co.,* 275 Md. 460, 473, 341 A. 2d 399, 407 (1975). Words are to be given their customary and normal meaning in the interpretation of insurance contracts. *C & H Plumbing and Heating, Inc. v. Employers Mut. Cas. Co.,* 264 Md. 510, 511-12, 287 A. 2d 238, 239 (1972); *Gov't Employees Ins. Co. v. DeJames,* 256 Md. 717, 720, 261 A. 2d 747, 749 (1970).

Having set out the principles of construction and interpretation applicable to the instant case, we now turn our attention to the first contention raised in this appeal by appellant. Bankers argues that "the application [for the insurance policy] should have been admitted in evidence [as] ... it was a material means of determining the meaning of words in the policy."

We have already seen that the insurance policy provides that the aircraft was to be piloted by "PAUL ERICKSON *AND* WILFORD GOLDMAN." (Emphasis supplied.) Bankers would have us construe the conjunction "and" as necessitating that both Erickson *and* Goldman be at the controls of the plane whenever it was in use in order for coverage under the policy to apply. Bankers then proceeds one more step by asserting that inasmuch as there is doubt, as to the meaning of the insurance contract, the application was properly admissible to explain the intent of the parties.

We, however, are unable to trod the same path of reasoning as Bankers. In our view, there is no ambiguity in the insurance contract, either as a whole or in the use of the conjunction "and" in the clause relative to pilots.

Where the court finds no ambiguity in the language of a contract, there is no need to resort to outside aids to its construction. *Walker v. Associated Dry Goods Corp.,* 231 Md. 168, 178-79, 189 A. 2d 91, 96 (1963); *Coopersmith v. Isherwood,* 219 Md. 455, 460, 150 A. 2d 243, 246 (1959). *See also Rice v. Rice,* 246 Md. 212, 217-18, 227 A. 2d 742, 744-45 (1967); *Ensor v. Wehland,* 243 Md. 485, 492, 221 A. 2d 699, 703 (1966).

Neither Judge Rutledge nor this Court perceive any ambiguity in the insurance policy so as to require the admission into evidence of the proffered application.

The conjunction "and" as used in the insurance policy has only one clear and unambiguous meaning to any reasonable person, and that is that "and" was used in the disjunctive sense to mean "or." [10] The reasoning of Judge Rutledge, we think, is most apropos:

> "If the interpretation of the plaintiff is correct, then both Erickson and Goldman would have had to be flying the plane. Although there are dual controls, for two to attempt to fly it would at once spell disaster. If one pilot tried to go right and the other

---

**10.** To obtain his private pilot's license, F.A.A. regulations required Erickson, as a student pilot, to fly an airplane alone for at least twenty hours. 14 C.F.R. § 61.109 (1977). The regulation was in effect, without revision, during 1973-74.

As appellee points out, if Bankers' position were correct,

> "Erickson would not have been covered by the policy for the solo flights required by Federal regulations of which Bankers ..., an aviation insurer, must have been aware, nor for any flight after he received a private or more advanced license. To accept ... [Bankers'] argument would be to inject into the policy a requirement that Erickson, who had obtained a student license for the purpose of attaining more advanced qualifications, was prohibited from pursuing the higher levels of skill and certification for which he was training and studying."

Such a result would, we think, be not only agonistic but patently contrary to the manifest intention of the parties.

> left, the stronger might prevail or simply impede the other. Two persons in a plane with dual controls are like two persons in a car with dual controls. One or the other can operate, but not *both.* And the Court will not attempt to intuit what the framers of the policy may have had in mind.
>
> But if the policy meant that Goldman ... had to be in the plane with Erickson for the policy to afford coverage, the policy completely fails to say so."

In construing "and" to mean "or" under the circumstances of the particular facts presented by this case, we follow the lead of the Court of Appeals in *Fidelity & Deposit Co. v. Mattingly Lumber Co.,* 176 Md. 217, 4 A. 2d 447 (1939), wherein the word "and" in a contractor's bond was interpreted to be in the disjunctive as "or," so as to effectuate the intent of the parties to provide indemnity protection to both the labor and the material man, where the surety had agreed to satisfy claims against the contractor "for all material furnished, installed, erected and incorporated in" the buildings.

Violating the old military cliché "Never reinforce a failure,"[11] Bankers makes one final sortie. It advocates that "[t]he same strict view of coverage," which Bankers contends was "taken" by the Court of Appeals in *Aetna Cas. and Sur. Co. v. Urner,* 264 Md. 660, 287 A. 2d 764 (1972), should be applied "with respect to the policy here." *Aetna Cas. and Sur. Co. v. Urner, supra,* dealt with an aviation policy which covered an aircraft piloted by "Gerald E. Weikel holding an FAA Private Pilot Certificate. . . ." When Diane Twigg, a passenger in a plane piloted by Weikel, was killed as a result of an aircraft crash near Fort Ritchie, Maryland on October 10, 1968, Aetna denied coverage. One reason for the denial was that Weikel did not and apparently never had held an "FAA Private Pilot Certificate" or higher. In short, the basic requirement of coverage, the Private Pilot license, was the missing ingredient that voided coverage. We believe *Urner* to be inapposite to the case at bar. If, however, *Urner* can be

---

11. John Keegan, *The Face of Battle* (1976).

said to apply to the instant case, it is by way of strengthening the position of the appellees. Rather than traveling the route of *Urner, i.e.,* private license to student pilot, Erickson went from student pilot to licensed private pilot.

We hold that the Circuit Court for Washington County properly construed the aircraft policy issued by Bankers to Electro.

*Judgment affirmed.*
*Costs to be paid by appellant.*