# THE AETNA CASUALTY AND SURETY COMPANY
### *v.* URNER, Adm'r of the Estate of Gerald Emerson Weikel ET AL.

[No. 202, September Term, 1971.]

*Decided March 8, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Charles E. Iliff, Jr.,* with whom were *John H. Mudd*

and *Semmes, Bowen & Semmes* on the brief, for appellant.

*Ronald C. Brubaker* for appellees.

SMITH, J., delivered the opinion of the Court.

This case presents the single issue of whether an insurance company is responsible in damages under its policy in which the named insured was described as "holding an FAA Private Pilot Certificate" when he in fact held no such license at the time of the crash giving rise to this litigation or at any other time. Since we conclude that there was no coverage under the policy, we shall reverse a declaratory judgment entered to the contrary.

Appellant, The Aetna Casualty and Surety Company (Aetna), is a member of United States Aircraft Insurance Group (the group). The group, composed of a number of insurance companies, issued an aircraft policy to Gerald E. Weikel. The declarations provided:

> "5. **Pilots.** This policy shall not apply to an aircraft while in flight unless operated by the following pilot(s) :
>
>> Gerald E. Weikel holding an FAA Private Pilot Certificate. Also, any pilot holding an FAA Private or Commercial Pilot Certificate who has flown a minimum of 500 hours as Pilot In Command at least 100 hours of which shall have been in retractable geared aircraft."

On October 10, 1968, Weikel and his passenger, Diane M. Twigg, were killed when the named aircraft crashed near Fort Ritchie. At the time of the crash the weather was not suitable for flying except by instruments. Aetna pointed to the fact that Weikel held only a student pilot certificate and says this did not authorize him to fly by

instruments. Regulations introduced by it clearly forbade any student pilot to "act as pilot in command of an aircraft [t]hat [was] carrying a passenger."

Damages as the result of the crash were claimed by the parents of Miss Twigg in a suit filed in the Circuit Court for Washington County against John H. Urner as Administrator of Weikel's estate. One provision of the policy granted "[a]ny one of the Companies [named in the policy] * * * the power to institute and maintain suits in its own name * * * for breach of any * * * obligation arising from or by reason of [the policy] and any judgment so obtained * * * by any one of the Companies * * * [is to] be binding on all of the Companies * * *." Invoking that provision, Aetna instituted a declaratory judgment action naming as parties defendant the administrator of the Weikel estate, the parents of Miss Twigg, and the administrator of her estate. It sought a declaration that none of said parties was protected by the subject policy "for any liability arising from the accident of October 10, 1968," that Aetna "and its associated companies are not required to defend any claims or actions growing out of the aforesaid accident," and that Aetna "and its associated companies are not required to pay any judgments, or any part of any judgments, which [might] be rendered as a result of the suit now filed arising from the alleged injuries to, and the death of, Diane M. Twigg by reason of the aforesaid accident."

In the circuit court a certificate was filed from the Federal Aviation Administration to the effect that Weikel never had had "a private pilot certificate" and that he never had held "any other of higher level," a point not here disputed.

We do not see this case as involving the question of whether the fraud of Weikel made the policy void from the beginning, whether the insurer had a duty to inquire about the exact licensing of the insured, or whether the insurer waived its right to rescind the policy, all as con-

tended by the appellees, nor do we see the case as involving the question of the circumstances under which a company may rescind, as seen by the trial judge, but rather we see the point as one of coverage.

Of course, what we have here is a contract and we are obliged to interpret that contract. Recognition has previously been given to the right of an insurer to limit by contract its potential liability. In *Galford v. Nicholas, Adm.,* 224 Md. 275, 167 A. 2d 783 (1961), this Court considered, and upheld as not in conflict with our financial responsibility law, a Virginia policy providing coverage for claims arising out of the use of any motor vehicle not owned by the insured. At the time of the accident in Maryland the insured was operating his own vehicle acquired after issuance of the policy and prior to the accident. Limitation to operation in a given territory was recognized by Chief Judge Thomsen in *Kelly v. Phoenix Assurance Company of New York,* 225 F. Supp. 562 (D. Md. 1964), a point involved in the controversy that produced *Casualty Ins. Co. v. Messenger,* 181 Md. 295, 29 A. 2d 653 (1943), where our predecessors determined the proper means of computing radius under such a policy. A limitation on the insurer's liability is recognized in the various cases that have considered the application of the "omnibus clause" in an automobile liability policy, *e.g. Keystone Ins. v. Fidelity & Cas.,* 256 Md. 423, 260 A. 2d 275 (1970) ; *Unsat. C. & J. Fund v. U.S.F. & G.,* 256 Md. 412, 260 A. 2d 279 (1970) ; and *Cohen v. Am. Home Assurance Co.,* 255 Md. 334, 258 A. 2d 225 (1969).

A requirement in an aircraft policy that the pilot meet certain standards would be analogous to a requirement in a motor vehicle policy relative to the operator of the vehicle. On that subject 7 *Blashfield Automobile Law and Practice* § 314.4 (3d ed. 1966) at p. 567 states:

> "The policy may provide that the insurance company shall not be liable for losses or damage caused while the automobile is being driven by any person violating any law or ordinance

as to a driving license, and such a provision is not contrary to public policy, unreasonable, or void; under such a provision there can be no recovery against the insurance company when the accident occurred while the vehicle was being driven by an unlicensed driver, even though the breach of such provision was not a proximate cause of the accident, and although the law requiring a license became effective after the policy was issued.

"Under a provision excluding coverage for injuries caused by the insured vehicle while being operated by a person violating regulations governing the licensing of drivers or a person whose license to drive has been suspended or revoked, there is no liability where the driver's license had expired, regardless of whether the violation increased the hazard. A provision in the policy that the insurer shall not be liable while the automobile is being used by a person prohibited by law from driving it is not meaningless and ineffective, and defeats liability to one hit by the insured automobile while being driven by an unlicensed driver."

7 *Appleman, Insurance Law and Practice* § 4401 (1942) states at pp. 349-50.

"[T]he insurer has a perfect right to restrict the operation to persons who are legally qualified under the state statutes to operate an automobile, and such a provision will be upheld. * * * Where an accident occurs while an unlicensed operator is at the wheel, the insurer would not be liable upon a policy containing such a restriction."

Among the decisions supporting this proposition are *State Farm Mut. Automobile Ins. Co. v. Coughran,* 303 U. S. 485, 82 L. Ed. 970, 58 S. Ct. 670 (1938) ; *Giacomo*

*v. State Farm Mutual Auto. Ins. Co.,* 203 Minn. 185, 280 N. W. 653 (1938) ; *Mondou v. Lincoln Mut. Casualty Co.,* 283 Mich. 353, 278 N. W. 94 (1938) ; and *State Farm Mutual Automobile Insurance Company v. Belshe,* 195 Ark. 460, 112 S.W.2d 954 (1938). In *Schaal v. Great Lakes Mut. Fire & Marine Ins. Co.,* 6 Wis. 2d 350, 94 N.W.2d 646 (1959), a policy under its exclusions provided that it should not apply while the automobile was operated by "any person who [was] not legally licensed to operate an automobile." The operator at the time of the accident had no license. Although the Wisconsin statute relative to liability insurance made the provision inapplicable on that subject, it was held applicable as to claims arising from the collision portion of the policy. In *Universal Indemnity Ins. Co. v. North Shore D. Co.,* 100 F. 2d 618 (7th Cir. 1938), the policy did not cover any liability "in respect of injuries caused in whole or in part by any automobile insured [t]hereunder while being operated or manipulated by any person violating regulations governing the licensing of motor vehicle operators, or when driven by any person whose right to drive ha[d] been enjoined by proper authority or whose license to drive ha[d] been suspended or revoked." Although the operator had had a license for a number of years prior to the accident, he had not renewed his license for the year in which the accident took place. The court held that one whose license had expired upon his failure to secure a renewal "was in the position of one whose license to drive had been 'suspended or revoked.' " The court then went on to state:

> "Defendant urges the materiality of a causal connection between the violation in question and the happening of the accident. Granting the validity of the coverage exception, it is an enforceable provision of the policy contract; and the legal consequence is that the risk of the loss under the proscribed conditions is not assumed under the contract obligation of the in-

surer. 'Courts of high authority have held that in policies so phrased there is no need of any causal nexus between the injury or death and the forbidden forms of conduct. While the proscribed activity continues, the insurance is suspended as if it had never been in force.' " *Id.* at 620.

citing *Travelers Assn. v. Prinsen,* 291 U. S. 576, 581, 54 S. Ct. 502, 78 L. Ed. 999 (1934). In *Sneed v. Concord Ins. Co.,* 98 N. J. Super, 306, 237 A. 2d 289 (1967), the policy provided coverage for certain named individuals "provided they [were] duly licensed to operate an automobile." Unfortunately, the driver of the vehicle in question permitted her license to expire on April 30. The accident took place on May 15. She renewed her license on May 17. The court held the lack of a license on the day of the accident abated the coverage of the policy in respect of the accident, stating, "The meaning of the policy language is not subject to fair doubt." It brushed aside a contention that this was a mere "technical violation." However, it went on to hold the company liable because of estoppel.

An insurance policy may exclude coverage when the airplane is flown by certain types of persons or pilots. 11 *Couch on Insurance* 2d § 42:634 (1963), citing *Pacific Indemnity Company v. Kohlhase,* 9 Ariz. App. 595, 455 P. 2d 277 (1969). In the latter case the declarations provided coverage when the aircraft was piloted by a named individual, by a second named individual "while under the direct supervision and control of a commercial instructor pilot," or when piloted by a private or a commercial pilot "properly certificated by the FAA" with certain minimum specified flying time, or when flown by a properly certificated pilot in the course of his employment by FAA or a repair station. The court said:

"Where, however, the undisputed facts show that no coverage exists, *i.e.,* that the accident is clearly within an excluded risk, then the

court has a duty to direct a verdict for the insurer. *Cashen v. Camden Fire Insurance Association,* 48 Tenn. App. 470, 348 S.W.2d 883 (1961) ; 46 C.J.S. Insurance § 1373, p. 636; *Arizona Fire Insurance Company v. Dillingham,* 23 Ariz. 508, 205 P. 589 (1922). Here the evidence conclusively shows that there was no coverage—the aircraft was in flight and piloted by one other than a pilot designated in the declarations. (The aircraft was piloted by a student pilot having no more than 33 hours logged flying time.)" *Id.* at 279-80.

To like effect *see Fireman's Fund Insurance Company v. McDaniel,* 187 F. Supp. 614 (N. D. Miss. 1960), *aff'd* 289 F. 2d 926 (5th Cir. 1961), where the policy was made not applicable if the aircraft were operated "in violation of the terms of any Civil Aeronautics Administration Pilot Certificate."

As we see this case, the question is whether there was coverage under the policy at the time of the accident, not whether the policy was void *ab initio*. If a person other than Weikel had been flying the plane, coverage would have existed only if that person's license and experience conformed with the declarations in the policy. In other words, there could be no coverage unless such pilot held either "an FAA Private or Commercial Pilot Certificate" and even then only if he had the hours specified in the policy as "Pilot In Command," including the specified experience "in retractable geared aircraft." It is obvious that the type of certificate held by a pilot would have a direct bearing on the exposure of the insurance company and, consequently, upon the determination of a proper rate, just as the location of the cabs in *Boyer v. Transit Casualty Co.,* 263 Md. 36, 282 A. 2d 3 (1971), had a bearing on the rate there. When the group placed the words "holding an FAA Private Pilot Certificate" after Weikel's name we conclude those words were just as much intended to specify the requirements which

would be necessary for coverage of his operation of the plane as the language used relative to other pilots was intended to specify with reference to them. Since he held no "FAA Private Pilot Certificate," there was no coverage.

Insurance coverage can not be established by waiver. *A/C Electric Co. v. Aetna Ins. Co.,* 251 Md. 410, 419, 247 A. 2d 708 (1968), and *Prudential Ins. Co. v. Brookman,* 167 Md. 616, 620, 175 A. 838 (1934). We perceive no conduct on the part of Aetna here which would estop it from denying coverage. The attempt by it to settle with the claimants is not a basis for estoppel.

> *Order reversed and case remanded for passage of a declaratory judgment consistent with this opinion; appellees to pay the costs.*