**OLD REPUBLIC INSURANCE COMPANY**

v.

**Michael B. GORMLEY, et al.**

**No. CIV. S 99–19.**

United States District Court, D. Maryland.

Dec. 10, 1999.

Jonathan M. Stern, Schnader Harrison Segal & Lewis LLP, Juliet. M. Stoudt, Schnader, Harrison, Segal & Lewis, Washington, DC, for Old Republic· Insurance Company, plaintiffs.

Charles Edward Mentzer, Law Office, Baltimore, Patrick M. Regan, Regan, Halperin & Long, Washington, DC, Johnny E. Dollar, Dollar Laird, LLP, Monroe, LA, for Michael B. Gormley, Latta Patel, Arthur H. Mensch, as Personal Representative of The Estate of Edward S. Mehlman, Deceased, Connie M. Caffef, as, Personal Representative of The Estate of Andrew L. Simon, Deceased, defendants.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This is a diversity case, in which the plaintiff, insurer of a 1969 Fairchild–Hiller FH1100 helicopter, N1345Q, seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that it is not obliged to provide a defense or coverage in connection with litigation arising from the fatal crash of the helicopter.

The aircraft crashed on Maryland's Eastern Shore on April 26, 1998, killing both of its occupants, Dr. Edward Mehlman and Mr. Andrew Simon. Neither of these individuals was the owner of the helicopter; it was owned by Michael Gormley and Latta Patel, who were not on board. The owners and the personal representatives of the deceased are the defendants in the present case. The plaintiff has moved for summary judgment, which the defendants have opposed. No oral hearing is needed. Local Rule 105.6, D.Md. In that there is no triable issue, for reasons to be articulated below, the plaintiff's motion will be *granted.*

To understand this case, one must have a bit of background in the federal regulations governing the piloting of aircraft. After required training, experience, and testing, pilots are issued an "airman certificate" under Title 14, Part 61 of the Code of Federal Regulations (C.F.R.), which is valid for exercising the privileges of pilot-in-command of an aircraft according to the ratings and limitations stated on the certificate.

With some minor exceptions not here relevant, all flying things that are piloted are aircraft. Some are airplanes (those with fixed wings and motors), while others are rotorcraft (those with rotary wings). Helicopters are one sort of rotorcraft (gyroplanes being another, rarer sort). An airman certificate issued for airplanes does not allow one to act as pilot in command of a rotorcraft, but one may manipulate the controls of an aircraft for which one holds no airman certificate, so long as the pilot in command holds an appropriate certificate.

It cannot be determined which of the two individuals aboard was actually manipulating the controls at the time the helicopter crashed and which was acting as pilot in command; obviously, only the decedents could answer those questions. Mehlman was a low-time airplane pilot, who had logged only a few hours of flight time in a helicopter. Mehlman's airman

certificate was limited to the aircraft category and class of "Airplane Single Engine Land." Thus, he could not exercise the privileges of a pilot in command of a helicopter. 14 C.F.R. § 61.63(a). Simon, on the other hand, was a high-time pilot who held an airman's certificate that permitted him to act as pilot in command of a helicopter under 14 C.F.R. Part 61. Although Simon had logged thousands of hours as pilot in command of aircraft, his logged helicopter time was below 250 hours, a fact of some consequence, as shall presently appear.

Even though, as noted above, the identity of the manipulator of the controls at the time of the crash cannot be determined, it is immaterial who was actually operating the aircraft, because, whether it was being flown by Simon or Mehlman, there is no coverage. That is, even if the helicopter was being physically piloted by Simon— who was the only person authorized to act as pilot in command—there was no coverage under the policy in question, for reasons that follow.

■ The policy in question is governed by Maryland law, as Maryland's choice of law rule in contract cases requires the forum court to utilize to *lex locus contractus*. The *locus contractus* in question is the place where the last act forming the contract was performed, which, in the case at hand, was the affixation of a counter-signature in Maryland. *See, e.g., Ward v. Nationwide Mut. Auto. Ins. Co.*, 328 Md. 240, 247, 614 A.2d 85, 88 (1992); *Rouse Co. v. Federal Ins. Co.*, 991 F.Supp. 460, 462–63 (D.Md.1998).

■ Under Maryland law, insurance contracts are not necessarily construed against the insurer, and their construction is a matter of law for the court where the language is unambiguous. *Fed. Leasing, Inc. v. Amperif Corp.*, 840 F.Supp. 1068, 1077 (D.Md.1993).

The policy in question includes an unambiguous "open pilot warranty" provision (an "open" warranty covers all pilots meeting the specifications, rather than only one or more named pilots), as follows:

Pilots: When in flight the aircraft will be piloted only by ANY COMMERCIAL PILOT WITH A ROTORCRAFT RATING PROPERLY CERTIFICATED BY THE FAA HAVING A MINIMUM OF 1200 TOTAL LOGGED ROTORCRAFT HOURS, 500 OF WHICH HAVE BEEN IN TURBINE–POWERED ROTORCRAFT, INCLUDING NOT LESS THAN 50 HOURS IN THE MAKE AND MODEL ROTORCRAFT BEING FLOWN.

Mem. In Supp. Of Mot. For Summ.J. at 4.

■ Maryland law recognizes and enforces "pilot warranty" clauses, without a showing that a pilot's failure to qualify thereunder was a cause-in-fact of a loss. *See Aetna Casualty & Surety Co. v. Urner*, 264 Md. 660, 287 A.2d 764 (1972). Federal courts uniformly enforce them as well, *see, e.g., U.S. Fire Ins. Co. v. Producciones Padosa, Inc.*, 835 F.2d 950 (1st Cir.1987), and for good reason. Pilot qualifications and experience are obviously factors bearing directly on the risk the insurer is underwriting. *Aetna*, 264 Md. at 667–68, 287 A.2d at 768.

■ Where, as here, pilot warranty provisions require a certain number of "logged" hours, that provision is implemented by reference to the actual pilot log. Pilot time accrued, but not logged, is ignored, even if the pilot was not required to log all the flight time (because he was not relying on it to obtain an FAA rating) under 14 C.F.R. § 61.51. *See e.g., Ideal Mut. Ins. Co. v. Limerick Aviation Co.*, 550 F.Supp. 437, 440 (E.D.Pa.1982). *See also Ideal Mut. Ins. Co. v. Lucas*, 593 F.Supp. 466, 469 (N.D.Ga.1983)(policy required 100 logged hours; 96.8 logged hours precluded coverage). There are many other cases that stand for the same proposition. *See, e.g., Monarch Ins. Co. v. Polytech Ind., Inc.*, 655 F.Supp. 1058 (M.D.Ga.1987), *aff'd*, 833 F.2d 1020 (11th Cir.1987); *Ideal Mut. Ins. Co. v. Last Days Evangelical Assoc., Inc.*, 783 F.2d 1234, 1239 (5th Cir.1986). The Court notes that the substantive law of Texas,

which resulted in a remand in *Ideal v. Last Days* to determine if the lack of pilot qualifications contributed to the loss, is not the same as that of Maryland and the majority of the states, where no such contribution need be shown by the insurer. *See cases collected* in *Security Ins. Co. of Hartford v. Andersen,* 158 Ariz. 431, 439–40, 763 P.2d 251, 259–60 (App.1986)(accepting minority view), *vacated in pertinent part,* 158 Ariz. 426, 429, 763 P.2d 246, 249 (1988)(accepting majority rule (Maryland's) as law of Arizona).

■ In this case, there can be no genuine dispute of material fact, under the standards of *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), that both Mehlman and Simon failed to meet the pilot warranty requirements. Mehlman had only a few hours of logged time in rotorcraft, and Simon's pilot logbooks record fewer than 250 hours of total rotorcraft time, less than 25 hours of which were in turbine-powered rotorcraft, and less than 16 of which were in the make and model of the insured aircraft, the FH1100. The pilot warranty required 1200 total rotorcraft hours, with 500 in turbine-powered rotorcraft and 50 in the FH1100.

The Court specifically rejects the points made by Dr. Gormley and Ms. Patel in their opposition memorandum, in their attempt to work around the "logged time" requirement. Certainly, under *Celotex,* any "evidence" (even if there were no hearsay bar to its admission, which is doubtful) of unlogged helicopter time that Mr. Simon might have acquired as a CIA pilot is insufficient to generate a genuine dispute of **material** fact, as unlogged time is not what the policy's pilot warranty called for; as has been discussed, only logged time qualifies a pilot under the applicable warranty. Similarly, the question of whether Mr. Simon misrepresented his time to Dr. Gormley is immaterial, as coverage obviously cannot be made dependent upon what a non-insured person told the insured, *de hors* the policy, about his experience level as a pilot.

The Court has considered, but rejects, defendants' attempts to work around the plain requirements of the pilot warranty.

Those attempts include a contention, without legal or factual support of any consequence, that the warranty was never part of the policy. Although the written endorsement in question was issued January 26, 1998, according to its terms, it was retroactive to the date of the issuance of the policy, November 1, 1997, and it was certainly in force at the time of the crash. The written endorsement setting out the pilot warranty was not a unilateral amendment of the policy, because, from its inception, the policy included the pilot logged time requirements in question. At his deposition, Dr. Gormley was asked about the warranty terms. He made it clear that, although he had at one time discussed lower logged time requirements with the insurance agent, he did not condition the purchase of the policy on such, and he "never questioned what I did get," referring to the pilot warranty as actually issued. Gormley dep. at 245. Furthermore, the pilot warranty as written is consistent with the very first discussions Dr. Gormley had with his aviation insurance agent and the binder he received. Gormley dep. at 31–33.

The following colloquy took place at the Gormley deposition, at 188–89:

Q. So even though you apparently signed that document, Gormley 3 [insurance quotation reciting the logged time hours of the open pilot warranty], on November 3, '97, you weren't cognizant of the open pilot warranty limitations until you actually received the endorsement sometime later to the actual policy?

A. That's correct.

Q. When you received the actual endorsement to the policy, did you—and you became aware of the limitations, did

you have any concern or express any concern about those limitations to either the agency representatives or the insurance company?

A. No, with a reason.

Q. I'm sorry, did you say there was a reason?

A. Well, I just—I didn't say anything to them, no, the reason being that we were going to buy a new machine that this would cover for that short period of time. It wasn't critical because we were going to change the policy to a teaching policy.

■ Under the clear law of this Circuit, Dr. Gormley, who is an experienced pilot, a dentist, a real estate broker, and most significantly, **a former aviation insurance broker**, is held to have read and understood the document in question. *See, e.g., Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 571 (4th Cir.1998). If he felt that the written endorsement was inconsistent with the terms he had agreed to, he certainly could have objected. He did not do so, obviously because he expected the warranty endorsement to be issued as written, in accordance with the terms he had agreed to with the broker. As noted above, it is clear from Dr. Gormley's deposition that there was a discussion of the required pilot time when the insurance coverage was being quoted, Gormley dep. at 31–33, at which time Dr. Gormley understood that the pilot requirement would be 1200 hours of rotorcraft time, 500 hours of turbine-rotorcraft time, and 50 hours in the make and model.

Whether Simon misrepresented his logged time to Dr. Gormley, as is suggested in Dr. Gormley's deposition, at 97 and 162–63, is, of course, immaterial. Dr. Gormley, in a letter he wrote only a few days after the accident, stated, "The pilot must meet the flight requirements of the open pilot warranty. I did not check Andy's logg [sic] but took him at his word that he meat [sic] this requirements [sic]." Gormley dep. Ex. 21.

Finally, of course, it does not matter that the pilot of the helicopter was not the owner; the pilot warranty applies to determine coverage, whether or not the pilot was the owner of the aircraft or the named insured under the policy.

The Court has also considered the positions of the other defendants, Caffes and Mensch, who have admitted that, if Simon did not meet the logged time requirements of the open pilot warranty, there is no coverage. The only other point raised by them in opposition is to rely upon the Gormley–Patel opposition to the extent that it suggests that the warranty was not part of the policy, but that part of the Gormley–Patel opposition simply repeats, without supporting facts or legal analysis, a part of the Caffes–Mensch answer to the complaint. For the reasons stated above, the warranty is not void as a unilateral amendment of the policy.

Accordingly, there is no impediment to applying the pilot warranty provision in this case as written, and plaintiff will be awarded summary judgment by a separate order to be entered herein.