IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | |
|---|---|
| MELVIN POTTER, an Arizona resident, and POTTER & SON, INC., a corporation, ) ) ) ) | 2 CA-CV 2003-0182 DEPARTMENT B |
| Plaintiffs/Appellants, ) ) | O P I N I O N |
| v. ) ) | |
| U.S. SPECIALTY INSURANCE COMPANY, a corporation, ) ) ) | |
| Defendant/Appellee. ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C-20023085

Honorable Charles S. Sabalos, Judge

AFFIRMED

---

Skousen, Skousen, Gulbrandsen & Patience, P.C.
  By David L. Abney                                            Mesa
                                 Attorneys for Plaintiffs/Appellants

Beer & Toone, P.C.
  Thomas L. Toone and Daniel R. Lord                        Phoenix
                                 Attorneys for Defendant/Appellee

---

F L Ó R E Z, Presiding Judge.

¶1     Appellants Melvin Potter and Potter & Son, Inc., (collectively Potter) are named insureds under a U.S. Specialty Insurance Company (USSIC) policy that covered a Cessna 414 aircraft (the aircraft) for liability and damage.  USSIC denied coverage for losses associated with the September 2001 crash of the aircraft, and Potter sued USSIC alleging, inter alia, claims of breach of contract and insurance bad faith, seeking declaratory relief and damages.  USSIC counterclaimed for declaratory relief, alleging that there was no coverage for the crash because the pilot had not "logged" the minimum flight hours required for coverage under the policy.  The parties filed cross-motions for summary judgment, and the trial court granted USSIC's motion, entered judgment in favor of USSIC, and awarded USSIC its attorney fees.  Potter appealed.  We conclude the trial court properly granted summary judgment in favor of USSIC.  We affirm.

¶2     Construction of a contract is a question of law, which we review de novo. *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 647 P.2d 1127 (1982).  We view any pertinent facts, however, in the light most favorable to Potter.  *See Pioneer Annuity Life Ins. Co. v. Rich*, 179 Ariz. 462, 880 P.2d 682 (App. 1994).

¶3     The policy provided that the aircraft was insured against certain losses when either Melvin Potter piloted it or it was piloted by a commercially certified pilot who had a minimum of 3,000 "logged pilot hours," 1,500 of which had been "logged in multiengine

2

aircraft," and one hundred of which had been "logged in the same make and model" as the aircraft covered.[1]

¶4        Mitchell Schier was piloting the aircraft when it crashed. He and both passengers were killed. Schier had been a licensed pilot since May 1984 and had acquired his commercial license with single and multiengine ratings in 1986. Thereafter, he had flown charter flights in both single and multiengine aircraft. He had received a flight instructor's certificate in February 1986 and had been a flight instructor since August 2000. In response to interrogatories, Melvin Potter stated that "[Schier] had told Mel Potter that he had logged well over one thousand five hundred hours of multi-engine flight time . . . [and] had certainly logged over fifty hours in a [Cessna 414] and, indeed, much more than that." But the single logbook found in Schier's effects documented only 236 pilot hours, all of which had been flown in single engine aircraft within approximately a two-month period in 2001.

¶5        Although USSIC conceded below, as it does on appeal, that Schier actually had flown more than was reflected in the logbook, the trial court granted summary judgment

---

[1]The applicable clause in the policy provides, in pertinent part, as follows:

The **aircraft** must be operated in flight only by . . .

A. Pilots having a current commercial certificate, with a multiengine and instrument rating, and a minimum of
    3,000   logged pilot hours, of which at least
    1,500   hours have been logged in multiengine aircraft, including at least
    100   hours logged in the same make and model aircraft we cover in [a preceding paragraph]

based on its conclusion that the term "logged" as used in the policy, which does not define the term, means "hours actually flown and reliably recorded in a flight time log." Potter contends that we should interpret the term "logged" to mean hours flown but not necessarily recorded, and he argues that the trial court erred in granting USSIC's motion for summary judgment because there was a question of fact as to how many hours Schier had flown as a pilot in the applicable categories of aircraft. USSIC insists the trial court correctly interpreted the term.

¶6 The parties have each cited various dictionary definitions of the word "logged," most of which include alternate definitions consistent with both parties' positions on the meaning of the word. In its minute entry ruling, the trial court quoted the definition that apparently appears in a Merriam-Webster's Collegiate Dictionary, defining "logged" as meaning both "to move (an indicated distance) . . . as noted in a log," and to "fly an airplane for (an indicated distance or period of time)." Although USSIC disputes some of Potter's dictionary definitions, clearly, both USSIC's and Potter's choices of the meaning of the word are used in common parlance. But we will not determine the matter before us based on warring dictionary definitions. Our task is to determine the meaning of the term as used in this particular insurance policy.

¶7 "As with any question of contract interpretation, our goal is to effectuate the parties' intent, giving effect to the contract in its entirety." *Tenet Healthsystem TGH, Inc. v. Silver*, 203 Ariz. 217, ¶ 7, 52 P.3d 786, 788 (App. 2002). In doing so, we consider the

4

language of the contract in view of the surrounding circumstances. *Smith v. Melson, Inc.*, 135 Ariz. 119, 659 P.2d 1264 (1983). Although we generally construe ambiguous terms in favor of the insured, especially if the ambiguity appears in an exclusionary clause, *Roberts v. State Farm Fire & Casualty Co.*, 146 Ariz. 284, 705 P.2d 1335 (1985), we first determine the meaning of an apparently ambiguous exclusionary clause by "examining the purpose of the exclusion in question, the public policy considerations involved and the transaction as a whole." *Ohio Cas. Ins. Co. v. Henderson*, 189 Ariz. 184, 186, 939 P.2d 1337, 1339 (1997); *see also State Farm Mut. Auto. Ins. Co. v. Wilson*, 162 Ariz. 251, 782 P.2d 727 (1989).

¶8     We conclude that the meaning of the term "logged," as used in this contract, is not ambiguous. An ambiguity exists when the language of the policy is unclear and can be reasonably construed in more than one sense. *Sparks*. Although no Arizona case has considered the meaning of this term in a similar contract, other jurisdictions have determined that the word "logged" in a pilot warranty provision of an insurance contract conveys the meaning USSIC urges. *See Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n, Inc.*, 783 F.2d 1234 (5th Cir. 1986) (provision requiring "logged" time showed intent to recognize only those hours flown and recorded); *Old Republic Ins. Co. v. Gormley*, 77 F. Supp. 2d 705, 707 (D. Md. 1999) ("Where . . . pilot warranty provisions require a certain number of 'logged' hours, that provision is implemented by reference to the actual pilot log. Pilot time accrued, but not logged, is ignored."); *Stewart v. Vanguard Ins. Co.*, 603 S.W.2d 761, 762 (Tex. 1980) ("The common-sense meaning of the term is that a record, however informal, is made of the

5

event."). We note in *Old Republic*, the court considered essentially the same argument Potter makes here and the court rejected it.

¶9        The definition urged by USSIC is also consistent with the intent of the clause and the transaction as a whole. *See Ohio Cas.* Although not specifically articulated, the purpose of the clause is clear. USSIC intended to limit its liability for losses associated with inexperienced pilots. "Human memory is so frail that a record needs to be made of the time, duration, point of departure, and destination of the flights during which the [minimum] hours are accumulated. It is the record that gives reliability to the required time." *Stewart*, 603 S.W.2d at 762.

¶10       Moreover, USSIC correctly points out that the term "logged" has a specialized meaning within the aviation industry, and a pilot seeking insurance for his or her plane would be aware of that meaning. *See, e.g., Old Republic.* It would be unreasonable to conclude that Potter, himself a pilot, understood a different meaning than that usually accepted within the aviation industry, particularly in the absence of any evidence that Potter negotiated some other definition.

¶11       Finally, we reject Potter's contention that he reasonably expected the policy would cover the aircraft when either he or any other "reasonably qualified" pilot flew it. There is no support in the record for this assertion. Potter concedes that the only written records known to exist of Schier's flight time show 236 hours in a single engine aircraft. These hours are clearly insufficient to meet the minimum requirements for coverage under

the policy. Therefore, we affirm the judgment in favor of USSIC insofar as it declares there was no coverage for the crash under the policy.

¶12     We also affirm the trial court's award of attorney fees to USSIC. Under A.R.S. § 12-341.01, a court may award reasonable attorney fees to the successful party in a contract action. Although Potter has not challenged the reasonableness of the number of hours spent or rate charged by USSIC's attorneys, he contends fees should not have been awarded because (1) the claim litigated was novel and meritorious, (2) USSIC was in a stronger economic position than Potter, and (3) an award of fees would deter others from litigating tenable claims.

¶13     A trial court has broad discretion to award attorney fees under § 12-341.01. *See State Farm Mut. Auto. Ins. Co. v. Arrington*, 192 Ariz. 255, 963 P.2d 334 (App. 1998); *see also Hale v. Amphitheater Sch. Dist. No. 10 of Pima County*, 192 Ariz. 111, ¶ 20, 961 P.2d 1059, 1065 (App. 1998) ("We will not disturb the trial court's discretionary award of fees if there is any reasonable basis for it."). We find no abuse of discretion here. A trial court should take into account the factors Potter cites, but the existence of any one of them is not dispositive. *See Wilcox v. Waldman*, 154 Ariz. 532, 744 P.2d 444 (App. 1987). Moreover, we note that the record contains no evidence of the relative economic positions of the parties or evidence that the award of fees constituted a hardship to Potter. Although no previous Arizona case had dealt with the meaning of the term "logged" in an insurance

7

contract, the case did not present a novel legal question, and we find no reason to believe that an award of attorney fees in this context would deter future meritorious claims.

**¶14**  Pursuant to § 12-341.01(A), we award USSIC its reasonable attorney fees and costs on appeal upon compliance with Rule 21(c), Ariz. R. Civ. App. P., 17B A.R.S.


                 _____
                 M. JAN FLÓREZ, Presiding Judge

CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Judge


_____
JOSEPH W. HOWARD, Judge