**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff,**

v.

**George MENDOZA, et al.  Defendants.**

**George Mendoza, Plaintiff,**

v.

**State Farm Mutual Automobile Insurance Company, et al., Defendants.**

**Nos. CIV.02–1141 PHX ROS, CIV.03–164 PHX ROS.**

United States District Court, D. Arizona.

June 2, 2006.

David M. Bell, David Bell & Associates PLLC, Floyd P. Bienstock, John Butler Nickerson, Steptoe & Johnson LLP, Phoenix, AZ, for Plaintiff and Defendants.

Richard S. Oseran, Richard S. Oseran PLLC, Bruce G. MacDonald, McNamara Goldsmith Jackson & MacDonald PC, David J. Diamond, Goldberg & Osborne, Lynne M. Trenery, Tucson, AZ, John C. Belt, Belt & Associates PC, Fountain Hills, AZ, for Defendants and Plaintiff.

Arlinda Fernandez, Mesa, AZ, pro se.

## Certification to the Arizona Supreme Court

SILVER, District Judge.

██ On February 7, 2006, State Farm filed a Motion for Reconsideration; or Alternatively, Motion for Certification of Question to the Arizona Supreme Court. Pursuant to Rule 27, Rules of the Supreme Court of Arizona, this Court certifies to the Arizona Supreme Court the following issue: whether the duty of equal consideration arises when an insurer in a multiple claimant case has offered to pay its policy limits in a settlement for its insured but the claimants demand an amount in excess of the insurance policy.

### I. Question of Law to be Answered

██ An insurer has a "duty to give equal consideration to the interest of the insured [when] a conflict of interest develops between the insurer and its insured." *State Farm v. Peaton,* 168 Ariz. 184, 812 P.2d 1002, 1013–14 (1991). Arizona has recognized two situations where a conflict of interest may arise. The first is "when the insurer refuses an offer to settle within policy limits." *Id.* at 1014. The second situation is when an insurer faced with a claim involving a "high potential of claimant recovery and a high potential of damages exceeding policy limits," chooses to "go[ ] for broke" by refusing to settle a claim. *Id.* (quoting *Fulton v. Woodford,* 26 Ariz.App. 17, 545 P.2d 979, 984 (1976)). According to *Peaton,* this second situation does not arise when an insurer in a single claimant case has offered its policy limits. That is, there is no conflict of interest between an insurer and its insured when the insurer has offered its policy limits but the claimant demands more. *Id.* No Arizona case has yet addressed whether the *Peaton* ruling should apply to multiple claimant cases. The issues to be resolved by the Arizona Supreme Court is if an

insurer has offered its policy limits to settle all claims in a multiple claimant case, does a conflict of interest arise (and, in turn, the duty to give equal consideration) when the combined demands of the claimants exceed the policy limits?

## II. Statement of Facts Relevant to the Question Certified

This case arises out of a two-car accident on U.S. 60 on November 22, 1998. Arlinda Jo Fernandez was driving one of the cars-a 1977 Chrysler Cordova. Her boyfriend, Michael Cardenas ("Cardenas"), was a front-seat passenger. Fernandez and Cardenas were nineteen and eighteen-years old, respectively, at the time of the accident.

Fernandez lost control of the vehicle, crossed over the center line, and struck an oncoming vehicle driven by Olivia Hernandez. Hernandez and her front-seat passenger, Tina Mendoza, were killed. Two passengers riding in the back seat of the Hernandez vehicle, Antonio Corona and Anthony Waddell, were injured. Cardenas was also injured.

Cardenas's grandfather, John Mutchler ("Mutchler"), owned the Chrysler driven by Fernandez. Cardenas had given Fernandez permission to drive. Mutchler's Chrysler was insured by Allstate Insurance Company ("Allstate") under a policy providing personal injury liability limits of $15,000.00 per person injured, and $30,000.00 per accident.

Fernandez was also covered by her father's State Farm policy with liability limits of $25,000.00 per person and $50,000.00 per accident. Under Ariz.Rev.Stat. § 28-4010, the Allstate policy was the primary policy, and the State Farm policy was excess.

The accident was reported to both Allstate and State Farm. State Farm assigned the claim to adjustor Kathy Jackson ("Jackson"). Jackson's "21 Day Report," dated December 29, 1998, notes that Fernandez was speeding and states that liability rests "100% on [her] for failure to control [the] vehicle." It further states: "We will work with Allstate to settle …."

Mendoza's survivors retained attorney Richard Oseran ("Oseran") to represent them with respect to their claim for damages. Hernandez's survivors, along with Anthony Waddell, retained attorney Richard Zawtocki ("Zawtocki"). Antonio Corona retained attorney John Penner. Fernandez and her parents retained attorney Aaron Kizer ("Kizer"), a family friend. Kizer represented Fernandez free of charge and acknowledges that he had limited experience in excess exposure and complex insurance claims.

Notwithstanding Kizer's representation letter, State Farm forwarded correspondence directly to the Fernandez family on January 11, 1999, informing Fernandez that it would be investigating the accident; assuring Fernandez that if she was served with a summons and complaint, State Farm would hire an attorney for her, requesting Fernandez's approval for State Farm to discuss the extent of liability coverage limits and to seek full and final settlement of the case; and requesting confirmation from Fernandez that no other liability coverage applied.

On February 22, 1999, Oseran sent a letter to Jackson estimating his clients' damages at $1,500,000.00 and demanding State Farm's policy limits. Jackson forwarded Oseran's letter to Kizer on March 9, 1999. She requested Kizer's input on how Fernandez would like her to handle the claim and explained that State Farm would try to obtain a release for Fernandez on any payments made, but could make no guarantees. She also said that State Farm would hire an accident reconstruction expert to review the case to see if

there were any possible defenses. There is no dispute that under the policy State Farm had sole authority, to the exclusion of its insured, to settle claims.

On March 16, 1999, attorney William Sandweg III ("Sandweg") forwarded a letter to Jackson informing her that Allstate had retained him to assist it and its insureds in trying to reach a global settlement and to obtain releases from all claimants. He asked her to call him to discuss their "cooperation in the effort to reach a global settlement." Sandweg also sent a letter to Oseran, stating: "Given the number of claimants and the magnitude of their claims, Allstate's obligation of good faith to its insureds precludes it from accepting your policy limits demand." He continued: "I am in the process of coordinating with the State Farm adjuster and hope to be able to get each of the claimants to agree to divide what I understand to be $80,000 of total liability limits."

On March 18, 1999, Oseran wrote to Sandweg explaining that his client would be interested in participating in a global settlement, but that he was "not certain that Michael Cardenas is entitled to any of the proceeds of the two insurance policies since it appears that he may have negligently entrusted his vehicle to [Fernandez], as well as assumed any risk of injury to himself." The other claimants expressed similar concerns.

On March 26, 1999, Jackson and Sandweg discussed the case by telephone. Jackson sent a letter to Sandweg on March 29, 1999, confirming the conversation. She advised: "As I have indicated to you in our conversation, I would be willing to offer any assistance in reaching a global settlement with all the claimants ...." A few days later, on April 1, 1999, Jackson forwarded Sandweg's letters to Kizer and informed him that Sandweg was assisting Allstate in efforts to reach a global settlement.

At some point, Sandweg and Jackson agreed to tender the collective liability limits of the Allstate and State Farm policies to the injured claimants in exchange for a release of all claims. At points in her deposition, Jackson testified that she was simply "cooperating" with Sandweg in his efforts to reach a settlement. At other points, however, she agreed that Sandweg was "authorized" to negotiate with State Farm's policy limits—to "utilize State Farm's policy proceeds in order to reach the global settlement."

Sandweg testified that he understood his relationship with State Farm as follows: "I was already offering limits on behalf of their insured or co-insured, Arlinda Jo Fernandez, [through the Allstate policy], and I was going to offer their [State Farm] limits as well, at least tender those out there on their behalf, and also if we got to the point of doing release documentation, it would include releases for State Farm and its insureds." Sandweg's colleague, John Ager, understood that State Farm was deferring to his (and presumably Sandweg's) judgment on how to resolve the claims with State Farm's policy proceeds.

Jackson spoke with Sandweg again on May 7, 1999. In a letter to Kizer dated May 11, 1999, she recounted: "[Sandweg] has advised that all claimants are favorable in settling the claim within the policy limits." She further explained that Cardenas was "having problems as a result of the accident and may need to have an attorney or conservator act on his behalf." She did not mention that the other claimants objected to Cardenas sharing in the proceeds.

After learning of Oseran's position, Sandweg determined that there was a potential conflict of interest between Fernandez and Cardenas. Cardenas had a potential claim for damages against Fernandez

for his injuries. To fully represent Fernandez, Sandweg would have to ask for a release of that claim.

On July 7, 1999, Sandweg wrote to Cardenas' attorney Evan Goldstein, asking him to advise Cardenas of the pros and cons of participating in a settlement. Sandweg observed that the claimants were restless and remarked: "My analysis is that, even if he does not receive a dime of the settlement proceeds, it is clearly in his best interest that the global settlement take place. If Mr. Cardenas were to refuse to participate in the global settlement, I would expect it to fall apart." Sandweg copied Jackson on this letter.

Sandweg arranged a global settlement conference with the claimants' attorneys for September 16, 1999. Jackson did not attend the conference. She testified that she expected Sandweg to represent State Farm's interests at the conference. Further, Kizer was neither invited to nor informed of the meeting. Jackson did not inform Sandweg that Kizer was Fernandez's personal attorney until after the conference. Kizer, however, was aware that Allstate and State Farm were offering their combined policy limits to all claimants to settle all claims against Fernandez. He was relying on Jackson, Sandweg, and Ager to track the progress of the settlement activities.

Sandweg met with the claimants' attorneys and offered to pay the $80,000.00 combined policy limits to the claimants in exchange for a release of their claims against Fernandez. Sandweg also explained that Cardenas would have to agree to release Fernandez and her family. Counsel for the other injured parties stated that they were unwilling to allow Cardenas to share in the settlement proceeds in any amount. Joseph Dolan, who now represented Cardenas, stated that Cardenas would not agree to waive his claim to a portion of the policy limits.

Sandweg eventually agreed that the claimants would have an opportunity to informally interview Cardenas and Fernandez regarding the accident. On September 29, 1999, Jackson reported to her supervisor at State Farm that Fernandez and Cardenas were being interviewed and that she would follow up with Sandweg after the interviews.

On October 7, 1999, the claimants took informal statements from Cardenas and Fernandez. Ager, Sandweg's associate, participated in the interviews. Jackson did not attend the interviews. She expected to get information from Sandweg. On October 8, 1999, Oseran sent a letter to attorneys Penner, Zawtocki, and Dolan, stating that the claimants maintained their belief that Cardenas was partially at fault for the accident and that they would not release Cardenas from liability unless he was willing to forego his claim to any portion of the policy limits. The letter further stated: "If he [Cardenas] is unwilling to forego his claim for damages then I do not see an alternative other than filing a lawsuit and naming Michael Cardenas as a defendant." Finally, the letter asked Dolan to inform Oseran and the other claimants' attorneys about what Cardenas planned to do.

On October 13, 1999, Ager sent a letter to Jackson summarizing the results of the interviews. He advised Jackson that it was unlikely that the Hernandez vehicle survivors would release their claims against Cardenas unless Cardenas agreed not to share in the insurance proceeds. On November 5, 1999, Ager sent a letter to the claimants' attorneys inquiring about the status of the parties' settlement positions, and offering his firm's offices for another settlement conference.

On November 9, 1999, Oseran responded with a letter to Ager, copying Goldstein, Penner, Zawtocki, Dolan, and Kizer, stat-

ing that unless Allstate and State Farm were willing to pay the entire policy proceeds solely to the Hernandez vehicle passengers and survivors by November 23, 1999, his clients (the Mendoza survivors) would file a wrongful death claim naming Fernandez and Cardenas as defendants. Oseran's letter was followed by a separate demand letter from Penner, counsel for Corona, stating that Corona would be willing to enter into a global settlement "if and only if" Cardenas agreed not to share in the settlement. Ager did not forward the letters to either insurer because he believed they did not communicate any change in the position of the claimants. In addition, he hoped the letters would cause Cardenas to withdraw his claims. No response was ever made while the settlement offer was pending.

On December 7, 1999, the Mendoza survivors filed suit against Fernandez and Cardenas in Superior Court in Pinal County. On January 7, 2000, Zawtocki wrote to Sandweg, copying Oseran, Dolan, Penner, Ager, and Kizer, joining in Oseran's November 9 demand on behalf of the Hernandez survivors and Waddell. There was no response to Zawtocki's letter, and the letter was not forwarded to State Farm.

At some point in January 2000, State Farm was notified that the Mendoza suit had been filed. It retained attorney Ron Collett to defend Fernandez, if necessary. On January 28, 2000, Collett sent a letter to Jackson informing her that he had spoken with both Sandweg and Kizer. Sandweg informed Collett of the Cardenas issue, and that Allstate would be retaining counsel for Fernandez. Collett suggested to Kizer that Fernandez should maybe authorize payment of the combined policy limits to the occupants of the Hernandez vehicle and take her chances with Cardenas. Kizer suggested that perhaps the other claimants might agree to take $75,000.00, leaving $5000.00 for Cardenas.

In February 2000, Oseran sent a letter to Dolan confirming that Dolan wanted as little as $3000.00 to settle Cardenas's claim. While it does not appear that Jackson received this letter, Jackson admits she never inquired as to Cardenas's demands and never asked Sandweg or Kizer to do so. State Farm did not take a statement from Cardenas or Fernandez. Jackson admits that she never evaluated any of Cardenas's claims to determine the relative value of the claims or how much Cardenas could have hoped to recover. As of February 7, 2000, it remained State Farm's position that it required five releases to resolve the claim.

Further, an AHCCCS medical lien in the amount of $17,270.00 existed against any recovery obtained by Cardenas. In March 1999, State Farm issued a draft in the amount of $10,000.00 to Mercy Care pursuant to the "med pay" portion of the policy. This left a balance of $7,270.00 to be paid to Mercy Care from any monies recovered by Cardenas. Jackson never discussed these facts with Cardenas, Dolan, Fernandez, or Kizer.

Kizer, for his part, never requested that State Farm pay its policy limits just to the Hernandez vehicle claimants, though he received Oseran and Zawtocki's demands and though he was aware that a "sticking point" for settling the claims against Fernandez was whether Cardenas would share in the policy proceeds. Kizer did not want the Allstate and State Farm policy limits paid unless the insurers were in a position to obtain releases from all claimants.

At the same time, State Farm did not inform Kizer of: (1) the facts or legal basis upon which the Hernandez vehicle claimants believed Cardenas was responsible for the accident; (2) what Cardenas wanted to settle his claim; (3) that any amounts Cardenas hoped to recover under the liability portion of the policy could be offset

by the $10,000.00 paid out to Cardenas under the med pay portion of the policy; (4) that the claimants were getting restless since nearly a year had passed since the accident; (5) that State Farm knew that Cardenas had tested positive for cocaine, benzodiazepines and cannabis following the accident; (6) that there were funds available to Cardenas under the property damage provisions of the policy; (7) and that there was a medical lien on any proceeds Cardenas hoped to recover. Kizer indicated that he would have advised Fernandez differently had he been provided with this information.

On February 24, 2000, the Hernandez survivors and Waddell filed suit against Fernandez and Cardenas in Superior Court in Pinal County. Corona filed suit on May 15, 2000. In April and May 2000, Collett and Sandweg attempted to arrange a mediation hearing with all of the claimants' attorneys. Oseran responded that he was not interested in mediation.

State Farm and Allstate filed interpleader actions to pay their policy limits into court. Cardenas ultimately withdrew any claim for personal injuries and accepted $ 7,500.00 from the property damage portion of the State Farm policy. Ultimately, as part of a *Morris* agreement, Fernandez allowed default judgments to be taken against her in exchange for covenants not to execute and an assignment of all claims against State Farm and Allstate. Judgments were entered against Fernandez in the amount of $1,500,000.00 on the Hernandez survivors' claim, $1,800,000.00 on the Mendoza survivors' claim, $100,000.00 on Corona's claim, and $80,000.00 on Waddell's claim. State Farm did not authorize or consent to Fernandez entering into the agreement.

State Farm filed this action on June 19, 2002, seeking a declaratory judgment that it acted reasonably and in good faith and that Fernandez breached her duty of cooperation by entering into the agreement. Mendoza and the other assignees filed a complaint against State Farm in state Court in Pima County on February 26, 2003, alleging breach of contract and bad faith failure to settle (breach of the duty of equal consideration). That action was removed and later consolidated with State Farm's declaratory judgment action.

## III. List of Counsel Appearing in the Matter

### A. Counsel for State Farm

David M. Bell
David Bell & Associates, PLLC
2020 N. Central Avenue Collier Ctr
Phoenix, AZ 85004
602–354–0050

Floyd P. Bienstock and John Butler Nickerson
Steptoe & Johnson LLP
201 E. Washington St.
Suite 1600 Phoenix, AZ 85004
602–257–5200

### B. Counsel for Mendoza et al.

Lynn M. Trenery
5025 N. 1st Street
Tucson, AZ 85715

Richard S. Osersan
Richard S. Oseran PLLC
145 S. 6th Ave
Tucson, AZ 85701
520–882–0044

Bruce G. Macdonald
McNamara, Goldsmith, Jackson & Macdonald, PC
1670 East River Road
Suite 200
Tucson, AZ 85718
520–324–0126

David J. Diamond
Goldberg & Osborne
33 N. Stone Ave
Suite 900

Tucson, AZ 85701

520–909–0909

John C. Belt

Belt & Associates PC

13034 Verde River Dr.

Suite 104

Fountain Hills, AZ

### IV. Proportion the Parties Shall Share the Required Filing Fees

State Farm          100%

Mendoz et al.          0%

### V. Other Matters Relevant to Certification

■■■■ The issue presented is appropriate for certification because it is a matter of first impression and statewide importance that is likely to arise again.[1] *See State ex rel. Romley v. Martin*, 203 Ariz. 46, 49 P.3d 1142, 1143 (2002) (stating reasons certain issue was appropriate for special action review). Insurance disputes have long been recognized as implicating important public policy concerns. *Potter v. U.S. Specialty Ins. Co.*, 209 Ariz. 122, 98 P.3d 557, 559 (2004) (observing that insurance contracts must be interpreted in light of public policy considerations). The interpretation and application of Arizona law is better left to Arizona courts. *See Wallace v. Smith & Smith Const., Inc.*, 65 F.Supp.2d 1121, 1123 (D.Or.1999) ("[S]tate law tort claims are best resolved by the state courts.").

Accordingly,

**IT IS ORDERED** the Motion for Reconsideration; or Alternatively, Motion for

---

1. The general rule is to deny a request for certification made by the party that sought to have a federal court hear the suit. *See, e.g., Harvey E. Yates Co. v. Powell*, 98 F.3d 1222, 1229 n. 6 (10th Cir.1996) (denying a certification request by the defendant, despite the "importance and novelty of th[e] question" presented based on defendant's choice to remove the action to federal court and the fact that defendant only sought certification after

Certification of Question to the Arizona Supreme Court (Doc. 192) is **GRANTED IN PART**. Plaintiffs' request for certification is **GRANTED**.

**IT IS FURTHER ORDERED** the Clerk of Court shall provide the original and six copies of this certification order to the Arizona Supreme Court.

---

an adverse ruling); *Croteau v. Olin Corp.*, 884 F.2d 45, 46 (1st Cir.1989) ("[O]ne who chooses to litigate his state action in the federal forum ... must ordinarily accept the federal court's reasonable interpretation of extant state law rather than seeking extensions via the certification process."). But allowing this case to proceed without certification would be a needless consumption of time. Thus, certification is appropriate.